JUDSON v. MILLER.

1. EQUITY JURISDICTION—REFORMATION OF CONVEYANCE—STATUTE OF FRAUDS.

Equity has jurisdiction to correct a mistake in the description of land in a conveyance, irrespective of the statute of frauds.

2. MORTGAGE FORECLOSURE—DEFENSES—TITLE FOUNDED ON TAX DEEDS—NEGLECT OF ADMINISTRATOR.

One who has purchased land from a claimant under tax deeds cannot defend a suit to foreclose a purchase-money mortgage given by him upon the ground that it was his duty, as an administrator in possession, to discharge the taxes for the non-payment of which the deeds were executed, and that, therefore, he acquired no title and the mortgage could convey none.

Appeal from St. Clair; Vance, J. Submitted June 13, 1895. Decided July 2, 1895.

Bill by James B. Judson and Washington G. Wiley against Henrietta Miller and Edward Kessel to reform a deed and a mortgage, and to foreclose the latter. The conveyances described the land as located upon a section other than that alleged to have been intended. Complainants appeal from a decree dismissing the bill. Reversed.

*Atkinson & Wolcott*, for complainants.

*Phillips & Jenks (John M. Gleason,* of counsel), for defendants.

MONTGOMERY, J.   This suit was originally instituted against Henrietta Miller and Edward Kessel. Defendant Kessel disclaimed any interest on the trial, and the case proceeded as though Mrs. Miller were the only defendant.

Defendant is the wife of Jacob Miller, who, in 1836, purchased the E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 32, township 7 N., range 17 E., by contract from one Samuel Wilson, who had located it in 1825. Jacob Miller and his wife, the defendant, lived on the land from the time of their purchase until 1860, when Jacob died, and the defendant was appointed administratrix of his estate, and has continued in possession of the premises ever since. There remained about $150 due from Miller to Wilson on the principal sum secured by the contract, which has never been paid. After the date of Miller's contract, on January 29, 1836, Wilson sold the land to Charles Peltier, the conveyance being recorded the same day. February 4, 1836, Peltier conveyed to Peter Desnoyer, by a deed recorded February 15, 1836. Desnoyer gave back a purchase-money mortgage to Peltier, which was duly recorded. There appears written across the face of the record of this mortgage what purports to be a discharge, in which instrument the name "Charles Peltier" appears in the body, but the signature, while it may have been intended for "Peltier," is indistinct, the complainants contending that the word reads "Pelim," but the circuit judge found that it was that of Charles Peltier. On December 13, 1836, Desnoyer conveyed to Charles D. Robinson by a deed recorded December 23, 1836. September 27, 1842, Charles Peltier conveyed to Henry N. Walker by a deed which, after describing the land, contains this recital:

"Being the same land heretofore deeded by C. D. Robinson and wife to Charles Peltier, by deed dated August 21, 1841."

February 19, 1881, Henry N. Walker conveyed to complainant Wiley. The auditor general, by two separate deeds, conveyed the same premises to complainant Judson, October 20, 1880, and December 7, 1880, respectively, for the taxes of 1877 and 1878.

In the fall of 1881, one of the complainants, Mr. Wiley, visited the defendant, and exhibited to her an abstract of title, and pressed for an adjustment of complainants' claims to the land. Subsequently the complainants executed a deed, which both they and the defendant supposed to be a deed of the land in question, running to defendant, and sent the same to N. E. Thomas, an attorney in Port Huron, to negotiate a settlement. Thomas and defendant agreed upon a price of $250, which was secured by mortgage running 10 years, with interest at 7 per cent. In the mortgage the same mistake was made describing the land as in the deed. In May, 1882, defendant paid $25 on the mortgage, and in January, 1883, $17. When the mortgage fell due, no further payments having been made, complainants foreclosed by advertisement. When the title became absolute in them, there were some negotiations between the parties, complainants offering to accept the amount of their bid, with interest. During these negotiations, the error in the description common to the deed and mortgage was discovered. The negotiations were terminated, and complainants filed this bill, asking to have the deed and mortgage reformed, and for a foreclosure of the mortgage. The circuit judge dismissed the bill, and complainants appeal.

Defendant claimed that she made this settlement hurriedly, and under threat that the property would be sold unless a settlement was made within a week, and that she had no opportunity to investigate complainants' claims to the title. But we are satisfied from the testimony that no fraud was practiced, and that she had ample time to investigate. The circuit judge denied relief, however, on the ground that, the lands not being correctly described in the conveyances which passed

between the parties, the contract rested in parol, and that, as the complainants have not done anything which they would not have done or omitted to do anything which they would have done but for the mistake, they are not entitled to relief in equity. The circuit judge seems to have relied upon *Climer* v. *Hovey*, 15 Mich. 18, to sustain this holding. That case was a case of an executory contract, and the view which the circuit judge seems to have followed was adopted only by Mr. Justice CAMP-BELL, Justices COOLEY and CHRISTIANCY expressly reserving the question, and Chief Justice MARTIN concurring in the result. In case of an executed contract, however, the great weight of authority is that equity has full power, on the ground of mistake alone, to correct a mistake in the description of land, even though the statute of frauds requires such conveyance to be in writing. In 2 Pom. Eq. Jur. § 866, it is said:

"It is settled by the great preponderance of authority that a deed of land may be thus corrected by enlarging its scope, extending its operation to other subject-matter, supplying portions of land which had been omitted, making the estates conveyed more comprehensive, as changing a life estate into a fee and the like, and by enforcing the instrument thus varied against the grantor."

See, also, *Conlin* v. *Masecar*, 80 Mich. 139; *Kimble* v. *Harrington*, 91 Mich. 281; Wat. Spec. Perf. § 372.

It is contended by defendant that as the circuit judge found that the only title which the complainants had was a tax title for unpaid taxes, and as it was the duty of the administratrix to pay the taxes, she could not acquire a title by tax deed, and that, therefore, the mortgage conveyed no interest. We think this contention should not be allowed. The conveyance and the mortgage should be treated together, and whatever title she acquired is subject to the mortgage. The court will not undertake to determine what title complainants may acquire by foreclosure. That question may arise later, between the heirs of Jacob Miller and the complainants. But, upon

this record, we think the complainants clearly entitled to a reformation of the instruments and to a foreclosure of the mortgage.

The decree below will be reversed, and a decree entered in this court in accordance with this opinion, with costs of both courts to complainants.

The other Justices concurred.